838 P.2d 293

**Glen O. THOMPSON, Plaintiff–Appellant,**

v.

**Dona Adams PIKE and Anderson, Pike & Bush, Defendants–Respondents.**

No. 19662.

Supreme Court of Idaho,
Boise, May 1992 Term.

Aug. 17, 1992.

Rehearing Denied Sept. 29, 1992.

Ellis, Brown & Sheils, Boise, for plaintiff-appellant. Glen O. Thompson and Allen B. Ellis argued.

Racine, Olson, Nye, Cooper & Budge, Chartered, Pocatello, for defendants-respondents. Brent O. Roche argued.

JOHNSON, Justice.

This is an attorney malpractice case in which the trial court granted summary judgment. The primary issues presented and our resolution of them are:

1. Was the appeal timely pursuant to I.A.R. 14(a)?

   We conclude that the appeal was timely.

2. Did the trial court correctly grant summary judgment on the ground that the statute of limitations contained in I.C. § 5–219(4) had run before plaintiff filed this action?

   We conclude that there is a genuine issue of material fact that precludes the granting of summary judgment.

3. Is there an alternative theory upon which this Court can uphold the summary judgment?

   We conclude there is not.

4. Was the trial court correct in awarding attorney fees?

   Because of our resolution of the summary judgment issues, we do not address the propriety of the award of attorney fees.

We vacate the summary judgment and the award of attorney fees and remand the case to the trial court for further proceedings.

I.

THE BACKGROUND AND PRIOR PROCEEDINGS.

Glen Thompson was terminated from his employment with Suburban Propane (Vangas). Thompson retained attorney Dona Adams Pike to represent him in a wrongful termination claim against Vangas.

Vangas offered to settle Thompson's wrongful termination claim for $15,000. On July 31, 1987, Thompson told Pike he would accept Vangas' offer, and Pike communicated this acceptance in a telephone call to a Vangas attorney. Vangas' attorney said that he would send an appropriate release to Pike for Thompson's signature.

On August 3, 1987, Pike wrote to Vangas' attorney confirming the telephone conversation of July 31, 1987. In this letter, Pike said:

It is my understanding that all claims which Mr. Thompson may have against Vangas as a result of his termination from Vangas are settled for the sum of $15,000.00. I further understand that Mr. Thompson will execute a release in return for payment of said sum.

Pike sent Thompson a copy of this letter.

On August 4, 1987, Vangas' attorney sent Pike a release, which he said in the letter of transmittal he had drafted "to reflect the settlement of this claim per our phone conversation of last Friday." The Vangas attorney said in the letter that it would take at least one week to obtain a check for the $15,000 settlement, and he asked Pike to contact him "in the interim to indicate acceptance of the enclosed or discuss any questions you may have."

The release stated that Thompson released Vangas from all claims "related to, connected with, or arising out of Thompson's former employment with Vangas and the cessation of that employment." The release included provisions: (1) requiring Thompson to reimburse Vangas for any withholding taxes for which Vangas might be liable because of the payment to Thompson in settlement of the wrongful termi-

nation claim, (2) requiring both parties to keep the settlement terms confidential, and (3) declaring that Thompson had not been coerced into signing the release.

Pike sent the release to Thompson, requesting that he review the release and, if it met with his approval, to sign and return it to Pike's office. Thompson told Pike that he was dissatisfied with the provisions of the release listed above and with the written release's failure to provide for payment of his profit sharing plan benefits. Thompson then submitted four proposals to Pike to settle his claims against Vangas on a different basis than the release. In response, Pike wrote to Thompson stating:

> Concerning the four proposals you left in my office on September 3, 1987, I must say that I am quite surprised. You authorized me to settle this matter in full for the sum of $15,000. Accordingly, at the time you agreed, I notified [Vangas' attorney] by telephone, and I confirmed the settlement agreement by letter to [Vangas' attorney] dated August 3, 1987, a copy of which was also sent to you.

> Once a settlement has been reached in a matter, the parties are bound. An oral settlement agreement is enforceable, particularly when confirmed in writing, as in this case.

> I advised [Vangas' attorney] by telephone this morning that you had submitted four proposals to me for consideration by him, and I have forwarded those proposals to him by mail. A copy of my letter is enclosed. [Vangas' attorney] informs me that the proposals are not acceptable, and that as far as he is concerned, this case has been settled for the sum of $15,000.

> I have also been notified by [Vangas] that the [release] must be signed by September 11, 1987, and they must be notified that it has been signed or they must have received the agreement.

> Please be advised that if you refuse to sign the [release], I will no longer be able to represent you. You should also be aware that [Vangas] may either sue to enforce the settlement agreement, or in the alternative, may assert the settle-ment agreement as a defense in the event that you retain other counsel and bring an action against [Vangas]. You should also be aware that if subpoenaed to testify, I would have no alternative but to testify truthfully that I had a telephone conversation with [Vangas' attorney] in which I advised him that the matter was settled, and further, that I mailed a letter to him confirming the settlement, a copy of which was also sent to you.

In a letter dated September 11, 1987, Pike told Vangas' attorney that Thompson contended his profit sharing plan benefits were independent of any settlement of the wrongful termination claims and that in Pike's opinion, Vangas was obligated to pay Thompson the profit sharing moneys. Shortly thereafter, Vangas agreed to pay Thompson his profit sharing plan benefits in addition to the $15,000 for settlement of the wrongful termination claims.

Thompson says that in reliance on Pike's advice that there was a binding oral agreement and that he had no choice but to sign the release, Thompson signed the release on September 29, 1987.

On September 28, 1989, Thompson sued Pike. The complaint alleged in Count One that Pike negligently advised Thompson that, without Thompson's authority, Pike entered into a settlement agreement with Vangas, when, in fact there was no binding settlement agreement. The complaint alleged in Count Two that Pike wrongfully misrepresented to Thompson that Pike had entered into a binding settlement with Vangas. Pike denied these allegations and asserted as an affirmative defense that Thompson's claims were barred by the statute of limitations contained in I.C. § 5-219.

Thompson filed a motion for partial summary judgment against Pike on the statute of limitations defense. Pike also moved for summary judgment, seeking dismissal of Thompson's claims.

In ruling on these motions, the trial court pointed out that Thompson admitted that he agreed to accept $15,000 from Vangas to settle the wrongful termination claim. The trial court ruled that the testimony of

Pike and Vangas' attorney "establish that a binding oral agreement was mutually agreed upon between these authorized representatives of Thompson and [Vangas] for the settlement of Thompson's wrongful termination claim against [Vangas] for $15,000 during their telephone conversation on July 31, 1987." The trial court also ruled that Thompson had not established that the provisions of the release to which Thompson objected were material variances from the settlement that Thompson had authorized Pike to make.

The trial court dismissed Count One of the complaint with prejudice because Thompson admitted that he authorized Pike to settle his wrongful termination claim for $15,000.

The trial court dismissed Count Two of the complaint with prejudice because Pike correctly advised Thompson that the oral agreement between Pike and Vangas' attorney on July 31, 1987, was a binding oral contract and is barred by the two-year statute of limitations contained in I.C. § 5-219(4).

The trial court granted Pike's summary judgment motion in an order that was mailed to Thompson's attorney by the trial court's law clerk on March 15, 1990. Thompson's attorney received the summary judgment order on March 20, 1990.

On March 16, 1990, the clerk of the district court placed the clerk's filing stamp on the summary judgment order showing that the order was filed on that date. The clerk of the district court did not mail Thompson's attorney a copy of the summary judgment order bearing the filing stamp.

Pike served Thompson by mail with a memorandum of costs and attorney fees on March 23, 1990. The memorandum listed costs of $216.00 and attorney fees of $6,162.00. Thompson served Pike by mail with a motion to disallow attorney fees on April 9, 1990. The clerk of the district court placed the clerk's filing stamp on the motion on April 10, 1990.

On May 16, 1990, Thompson served Pike by mail with a motion to alter or amend the judgment pursuant to I.R.C.P. 59(e) together-er with a notice setting a hearing on the motion for May 29, 1990. On May 24, 1990, Pike served Thompson by mail with a brief which argued that Thompson's I.R.C.P. 59(e) motion was untimely because it had not been filed within fourteen days after the entry of judgment. In response, Thompson submitted an affidavit of the secretary to Thompson's attorney dated May 29, 1990, which stated:

That on May 3, 1990, I contacted Judge Young's clerk regarding the judgment in the above matter. The judgment had not been signed as of that date for the reason that, according to the judge's clerk, there was a demand for attorney's fees and costs. Judge Young had indicated to her that he would wait until after the May 29, 1990, hearing on attorney's fees and costs before entering a judgment. I was told by the judge's clerk that if anything happened prior to the May 29, 1990, hearing, she would contact me.

The hearing on the motion to disallow attorney fees and the motion to alter or amend the judgment was held on June 25, 1990. Following the hearing, the trial court issued an order ruling on the motions on June 28, 1990. The trial court ruled that the I.R.C.P. 59(e) motion was timely filed, denied the motion, and granted Pike's request for attorney fees.

Thompson filed a notice of appeal on July 25, 1990, challenging the trial court's dismissal of Count Two of his complaint pursuant to I.C. § 5-219(4) and the award of attorney fees. Thompson did not appeal the dismissal of Count One of his complaint.

Pike has presented as an additional issue on appeal whether the trial court properly granted summary judgment to Pike based on Thompson's failure to present a prima facie case of professional malpractice.

This Court assigned the case to the Court of Appeals. Pike moved to dismiss the appeal on the ground that the appeal was not timely. The Court of Appeals ruled that Thompson had not filed a timely appeal from the summary judgment, but did address the appeal as it related to the

award of attorney fees, which the Court of Appeals affirmed. We granted Thompson's petition for review.

## II.

## THOMPSON FILED A TIMELY APPEAL FROM THE SUMMARY JUDGMENT.

■ Pike asserts that Thompson did not appeal in a timely fashion from the summary judgment dismissing Thompson's claims. We disagree.

I.A.R. 14(a) states, in part:

Any appeal as a matter of right from the district court may be made only by physically filing a notice of appeal with the clerk of the district court within 42 days from the date evidenced by the filing stamp of the clerk of the court on any judgment, order or decree of the district court appealable as a matter of right in any civil or criminal action. The time for an appeal from any civil judgment, order or decree in an action is terminated by the filing of a timely motion which, if granted, could affect any findings of fact, conclusions of law or any judgment in the action (except motions under Rule 60 of the Idaho Rules of Civil Procedure or motions regarding costs or attorney fees), in which case the appeal period for all judgments, orders and decrees commences to run upon the date of the clerk's filing stamp on the order deciding such motion.

In this case, the trial court granted Pike's summary judgment motion, which the clerk of the court file stamped on March 16, 1990. Thompson filed an I.R.C.P. 59(e) motion to alter or amend the judgment on May 17, 1990.

I.R.C.P. 59(e) requires that "[a] motion to alter or amend the judgment shall be served not later than fourteen (14) days after entry of the judgment." The trial court determined that the I.R.C.P. 59(e) motion was timely pursuant to the requirements of I.R.C.P. 77(d), which states, in part:

Immediately upon the entry of an order or judgment the clerk of the district court, or magistrate's division, shall serve a copy thereof, with the clerk's filing stamp thereon showing the date of filing, by mail on every party affected thereby by mailing or delivering to the attorney of record or each party ... The clerk shall make a note in the court records of the mailing. Such mailing is sufficient notice for all purposes for which notice of the entry of an order is required by these rules ... Lack of notice of entry of an order or judgment does not affect the time to appeal or to file a post-judgment motion, or relieve or authorize the court to relieve a party for failure to appeal or file a post-trial motion within the time allowed, except where there is no showing of mailing by the clerk in the court records and the party affected thereby had no actual notice.

The trial court found that the clerk of the district court had not mailed a file stamped copy of the order to Thompson. In ruling that Thompson did not have actual knowledge of the entry of final judgment, the court relied on the affidavit submitted by the secretary to Thompson's attorney, in which the secretary stated that on May 3, 1990, the trial judge's clerk told her that judgment would not be entered until after the hearing on May 29, 1990. The trial court then denied Thompson's motion to alter or amend the judgment, and Thompson appealed within forty-two days.

Pike argues that our holding in *City of Preston v. Baxter*, 120 Idaho 418, 816 P.2d 975 (1991) controls. In *Baxter*, the Court stated: "The only question presented is whether the trial court's memorandum, decision and order included a specific direction as to the judgment to be entered." *Id.* This question was posed by the appellant in response to an order of the clerk of this Court stating that the notice of appeal was not timely with respect to the memorandum, decision and order and inviting the appellant to respond. The appellant's brief in response to this invitation stated only one issue:

Does the Memorandum Decision and Order filed August 8, 1990, meet the

requisites of Rule 58, I.R.C.P., and decisional law as a final, appealable judgment?

It was this question, and this question only, that the Court addressed and decided in *Baxter.*

In this case, the evidence is undisputed that the trial court's law clerk sent a copy of the summary judgment order to Thompson the day before the district court clerk placed the clerk's filing stamp on the order, and that the trial court records do not show that the clerk of the district court ever sent Thompson a copy of the order bearing the filing stamp. Under I.R.C.P. 77(d), this leaves us with the question of when Thompson had actual notice. As we read the rule, this must be actual notice of the entry of the summary judgment order.

I.R.C.P. 58(a) provides: "The placing of the clerk's filing stamp on the judgment constitutes the entry of the judgment." The summary judgment order dismissing Thompson's claims is very similar to the order in *Baxter.* The placement by the clerk of the district court of the filing stamp on the summary judgment order on March 16, 1990, constituted the entry of judgment. *Baxter,* 120 Idaho at 420, 816 P.2d at 977. If Thompson had actual notice of the placement of the clerk's filing stamp on the summary judgment order more than fourteen days prior to the filing of the motion to alter or amend the judgment, the motion would have been untimely under I.R.C.P. 59(e) and 77(d).

In support of its conclusion that Thompson's motion to alter or amend the judgment was timely, the trial court referred to the affidavit of the secretary to Thompson's attorney and found that Thompson "had no actual notice of the entry of judgment because [Thompson's] counsel was misled by the information he received from the clerk's office."

Even though the trial court's finding that Thompson had no actual notice was apparently based solely on the affidavit of the secretary to Thompson's attorney, and not on any oral testimony presented to the trial court, we will not substitute our impressions gained from the written record considered by the trial court for the finding of the trial court unless we are convinced the finding is clearly erroneous. *Cf. Shelton v. Diamond Intern. Corp.,* 108 Idaho 935, 937–38, 703 P.2d 699, 651–52 (1985).

We conclude that the trial court's finding that Thompson did not have actual notice of the entry of judgment dismissing Thompson's claims is not clearly erroneous. The affidavit of the secretary to Thompson's attorney provides substantial and competent evidence to support the finding. Although the contents of the affidavit contained significant hearsay, the record discloses no objection by Pike to the consideration of the contents of the affidavit, and Pike has not raised this issue on appeal.

## III.

**THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER THE PARTIES INTENDED THE ORAL SETTLEMENT TO BE BINDING OR WHETHER THE WRITTEN RELEASE WAS TO BE THE BINDING AGREEMENT.**

Thompson asserts that the trial court should not have granted summary judgment dismissing Count Two of the complaint on the ground that the claim was barred by the statute of limitations contained in I.C. § 5–219(4). We agree.

The trial court concluded that the settlement agreement between Pike and Vangas' attorney on July 31, 1987, was binding and, therefore, that the statute of limitations for Thompson's malpractice action began running on that date. The court ruled that the two-year statute of limitations for professional malpractice actions contained in I.C. § 5–219(4) barred Count Two of the complaint.

We first note that Thompson conceded in the trial court and concedes on appeal that if there was a binding settlement agreement on July 31, 1987, any suit against Pike for professional negligence should have been filed within two years of that date. By this concession, Thompson has

not distinguished between the claim alleged in Count One of the complaint (negligent advice) and the claim alleged in Count Two (wrongful misrepresentation). Thompson characterizes his claim against Pike in Count Two as a claim for "professional negligence." Although we question whether the words used in Count Two to assert Pike's liability ("Pike wrongfully misrepresented to [Thompson] that she had entered into a binding settlement with Vangas.") are correctly characterized as professional negligence, we accept Thompson's characterization, because both the trial court in its decision and Pike in her briefs on appeal accept it.

In resolving a statute of limitations issue in a professional malpractice case, our focus is usually on the question of when "some damage" occurred. *Bonz v. Sudweeks*, 119 Idaho 539, 808 P.2d 876 (1991). In this case, the parties have proceeded with the implicit agreement that if a binding oral settlement was reached on July 31, 1987, Thompson suffered damage at that time. Although we question whether Thompson necessarily suffered damage on July 31, 1987, even if the oral settlement was binding, for the purposes of this case, we accept the implicit agreement of the parties on this point and address the issue of whether there was a binding oral settlement on that date.

■ The formation of a contract requires mutual assent. *Haener v. Ada County Highway Dist.*, 108 Idaho 170, 173, 697 P.2d 1184, 1187 (1985). A distinct understanding common to both parties is necessary in order for a contract to exist. *Hoffman v. S V Co., Inc.*, 102 Idaho 187, 189, 628 P.2d 218, 220 (1981). It is a question of fact whether mutual assent exists. *Glenn v. Gotzinger*, 106 Idaho 109, 110, 675 P.2d 824, 825 (1984).

■ The parties' intent determines whether an oral contract was formed when the parties agree to reduce their agreement to a writing. *Mitchell v. Siqueiros*, 99 Idaho 396, 400, 582 P.2d 1074, 1078 (1978). An oral agreement is valid if the written draft is viewed by the parties as a mere record; the oral agreement is not valid if the parties view the written draft as a consummation of the negotiation. *Elliott v. Pope*, 42 Idaho 505, 510–11, 247 P. 796, 797 (1926). The intent to have a written contract is shown by factors such as: (1) whether the contract is one usually put in writing, (2) whether there are few or many details, (3) whether the amount involved is large or small, (4) whether it requires a formal writing for a full expression of the covenants and promises, and (5) whether the negotiations indicate that a written draft is contemplated as the final conclusion of negotiations. The burden of proof is on the party asserting that the contract was binding before the written draft was signed. *Id.*

■ In this case, the evidence is conflicting as to whether the parties intended the oral settlement to be binding or whether they intended the written release to be the binding settlement. During the discussion between Pike and Vangas' attorney on July 31, 1987, Vangas' attorney said he would send Pike an appropriate release for Thompson's signature. Letters written by Pike and Vangas indicate that the parties contemplated a written contract:

1. In Pike's letter to Vangas' attorney confirming the discussions they had on July 31, 1987, Pike stated: "I further understand that Mr. Thompson will execute a release in return for payment of said sum."

2. When Vangas' attorney forwarded the written release on August 4, 1987, the attorney included a letter to Pike stating: "I would ask you to contact me in the interim to indicate acceptance of the enclosed or discuss any questions you have."

3. Vangas' attorney sent the $15,000 check to Pike and told her to hold it in escrow until "the execution of the Full Release and Settlement Agreement by your client."

In our view, these statements raise a genuine issue of material fact whether the parties intended the oral settlement of July 31, 1987, to be a binding contract or whether they intended that the written release would be the binding contract. Therefore,

the trial court should not have granted summary judgment on the basis of I.C. § 5–219(4).

## IV.

### PIKE IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE GROUND THAT THOMPSON DID NOT ESTABLISH A PRIMA FACIE CASE OF PROFESSIONAL MALPRACTICE.

■ In the additional issues presented by Pike on appeal, Pike contends that the trial court properly granted summary judgment dismissing Count Two of the complaint because Thompson failed to present sufficient evidence to establish a prima facie case of professional malpractice. We disagree.

First, as we read the trial court's order dismissing Count Two of the complaint, the trial court did not rule on the merits of the claim alleged. Nevertheless, we address the additional issue presented by Pike, because this would be an alternative theory upon which we could uphold the trial court's order. *Southern Idaho Realty of Twin Falls Inc. Century 21 v. Larry J. Hellhake and Associates Inc.*, 102 Idaho 613, 614, 636 P.2d 168 (1981).

In support of her position that Thompson did not establish a prima facie case of professional malpractice that would prevent the granting of summary judgment dismissing Count Two of the complaint, Pike asserts that Thompson did not present sufficient evidence on the following points:

1. Pike correctly advised Thompson that the oral settlement agreement of July 31, 1987 was binding.
2. Thompson did not rely on Pike's advice.
3. There was no evidence that Pike breached the standard of practice for attorneys or that Thompson suffered any actual damages as a result of the alleged malpractice.

Concerning the first of these points, we have concluded in deciding the statute of limitations issue that there is a genuine issue of material fact concerning the intent of the parties whether the oral settlement agreement was binding.

Concerning the element of reliance, Thompson stated in an affidavit in February 1990, that Pike advised him that there was a binding oral agreement and that he had no choice but to sign the release. Thompson stated that he accepted Pike's advice as correct and that, but for Pike's representation in this regard, Thompson would not have signed the release. Standing alone, this would certainly be sufficient to establish a prima facie case of reliance on Pike's advice before signing the release.

Pike contends, however, that in his deposition in November 1989, Thompson indicated he actually relied on the advice of two other attorneys. Only a portion of Thompson's deposition is before us in the record on appeal. In this portion of his deposition, Thompson says that he talked to the other two attorneys by telephone and they offered him advice on both the negative side and on the positive side. When asked whether he signed the release based on the advice of these other two attorneys, Thompson said: "I felt at the time with no income, that I had no alternative but to get out from under as easy and quickly as I could."

We do not find these two versions of Thompson's testimony about reliance to be essentially contradictory. For the purposes of summary judgment, there is a genuine issue of material fact whether Thompson relied on Pike's advice in signing the release.

■ Concerning the element of breach of the standard of practice for attorneys, Pike did not present any evidence to raise an issue about whether her alleged conduct was in compliance with the standard of practice. Because the motion for summary judgment on the prima facie case issue was hers, Pike had the burden of showing the absence of any genuine issue of material fact. *LePelley v. Grefenson*, 101 Idaho 422, 428, 614 P.2d 962, 968 (1980). In the absence of any evidence presented by Pike that Pike had not breached the standard of practice, Thompson had no burden to re-

spond with evidence supporting a breach of the standard of practice.

Concerning the element of actual damages, with which Pike also joins the element of proximate cause, Pike did not support her motion with any evidence showing the absence of any genuine issue of material fact that Pike's alleged conduct was the proximate cause of any actual damages to Thompson. In the absence of evidence supporting the motion as to these elements, Thompson had no burden to respond with evidence supporting actual damages proximately caused by Pike's conduct.

### V.

### CONCLUSION.

We vacate the trial court's decision dismissing Count Two of the complaint and remand the case to the trial court for further proceedings. In light of this disposition, we also vacate the award of attorney fees.

We award Thompson costs on appeal. Thompson did not request attorney fees on appeal.

BAKES, C.J., BISTLINE and McDEVITT, JJ., and REINHARDT, J. Pro Tem., concur.