31 P.3d 921

**INTERMOUNTAIN FOREST MANAGE-
MENT, INC., a Utah corporation,
Plaintiff–Appellant,**

v.

**LOUISIANA PACIFIC CORPORATION,**
a Delaware corporation, Defendant–
Respondent.

No. 24988.

Supreme Court of Idaho.

Aug. 31, 2001.

Idaho Falls, May 2001 Term.

Moore, Smith, Buxton & Turcke, Boise; Haglund & Kirtley, Portland, for appellant. Scott W. Horngren, argued.

Hawley Troxell Ennis & Hawley, Pocatello, for respondent. Ronald E. Bush, argued.

TROUT, Chief Justice.

This is an appeal from the district judge's grant of summary judgment denying the existence of a logging contract between Idaho Forest Management ("IFM") and Louisiana Pacific Corp. ("L–P").

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 1997, IFM brought suit against L–P for breach of a logging contract. IFM alleges it entered into a logging contract with L–P in September 1996 to log 6,000 tons of green saw logs. IFM alleges L–P repudiated the contract costing IFM $32,000 in lost profits. L–P denied the existence of the contract on the grounds that it had never executed the agreement.

In 1996 L–P entered into a written agreement with SMF Resources ("SMF") to log timber on the Wolverine Tract in Bingham County. SMF stopped work in the area due to financial difficulties. Gary Briggs ("Briggs"), IFM's President, was working for SMF on the Wolverine Tract job when work stopped. Briggs contacted Laurie Stone ("Stone"), L–P's forester on the Wolverine sale, proposing that IFM finish logging the Wolverine Tract on the same terms as the SMF contract. Following the conversation,

Stone and Briggs met and Stone presented an unsigned form contract containing the proposals made by Briggs. Briggs signed the document without making any changes. In his deposition, Briggs admits he was aware Stone had no authority to bind L–P on the contract, the contract was unsigned at the time Briggs signed it, and Stone had to take the contract back to L–P for a signature. The contract presented to Briggs had a blank signature line on the front page with the title "Forest Resources & Fiber Procurement Mgr" underneath it.[1] The contract was never executed by anyone on behalf of L–P. After signing the contract, Briggs arranged to send, and L–P received, certificates of proof of insurance, purchased rain gear for two of the crew members, and claims his crew removed about six loads of logs from the sale area, delivered them to L–P's mills, and L P accepted the loads.[2]

L–P filed a motion for summary judgment, arguing the lack of signature on the contract, and therefore, the lack of mutual assent, precludes the formation of a contract as a matter of law. IFM responded with a cross-motion for partial summary judgment arguing that despite the lack of a signature, a contract was formed between L–P and IFM for completion of the Wolverine Timber Sale. The district judge granted summary judgment in favor of L–P, finding there was no mutual assent to enter into a contract absent the signing of the actual contract document by both parties.

## II.

## STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court employs the same standard as used by the district judge originally ruling on the motion. *Wensman v. Farmers Ins. Co. of Idaho*, 134 Idaho 148, 151, 997 P.2d 609, 612 (2000)(citing *McKay v. Owens*, 130 Idaho 148, 152, 937 P.3d 1222, 1226 (1997)). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affida-

vits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Where the parties have filed cross-motions for summary judgment relying on the same facts, issues and theories, the parties effectively stipulate that there is no genuine issue of material fact that would preclude the district court from entering summary judgment. *Davis v. Peacock*, 133 Idaho 637, 640, 991 P.2d 362, 365 (1999) (citations omitted). However, the mere fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact. *Kromrei v. AID Ins. Co.*, 110 Idaho 549, 551, 716 P.2d 1321 (1986)(*citing Casey v. Highlands Ins. Co.*, 100 Idaho 505, 507, 600 P.2d 1387, 1389 (1979)). The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits. *Stafford v. Klosterman*, 134 Idaho 205, 207, 998 P.2d 1118, 1119 (2000)(*citing Bear Island Water Ass'n, Inc., v. Brown*, 125 Idaho 717, 721, 874 P.2d 528, 532 (1994)).

Neither party in this case made a demand for a jury trial. When an action will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. *Id.* (citing *Brown v. Perkins*, 129 Idaho 189, 191, 923 P.2d 434, 436 (1996); *Loomis v. Hailey*, 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1991)). The test for reviewing the inferences drawn by the trial court is whether the record reasonably supports the inferences. *Id.* (citing *Walker v. Hollinger*, 132 Idaho 172, 176, 968 P.2d 661, 665 (1998); *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 518–19, 650 P.2d 657, 660–61 (1982)).

---

1. Ed Coates was the "Forest Resources & Fiber Procurement Mgr" for L–P. Both Stone and Briggs knew the contract would be taken to Coates for a signature and then mailed to Briggs.

2. The alleged work done by IFM is in dispute. As the district judge noted, if Briggs and his crew worked two days in reliance upon an expected contract, they can bring a claim for damages based on this, but no such claim was made.

## III.

## DISCUSSION

### A. The district judge did not err in granting summary judgment to Louisiana–Pacific.

L–P moved for summary judgment arguing it did not have a formal contract with IFM and therefore IFM is not entitled to recover on a breach of contract claim. L–P argues the undisputed facts in the record establish the absence of a genuine issue of material fact regarding the lack of mutual assent between the parties. Specifically, L–P points to the facts in the record that establish; 1) Briggs contacted Stone, L–P's forester on the Wolverine sale, proposing that IFM finish the Wolverine sale on the same terms as the SMF contract; 2) Following the conversation, Briggs and Stone met and Stone presented an unsigned form contract containing the proposals made by Briggs; 3) Briggs signed the document; 4) Briggs knew Stone did not have the authority to sign the contract; 5) Briggs knew Stone was going to take the contract "back for a signature and mail [Briggs] a copy"; 6) The contract itself reveals it was to be signed by the "Forest Resources & Fiber Procurement Mgr."

The record is clear that the contract was never executed by L–P. Because L–P has challenged an element of IFM's case, the burden shifts to IFM to come forward with sufficient evidence to create a genuine issue of fact on that element of their case. *Smith v. Meridian Joint School Dist. No. 2,* 128 Idaho 714, 719, 918 P.2d 583, 588 (1996). It is uncontroverted that no representative of L–P ever executed the contract; therefore, even drawing all inferences in favor of IFM, there are no genuine issues of material fact in dispute regarding the lack of execution of a formal contract and the district judge did not err in granting L–P summary judgment on this issue.

### B. The district judge did not err in denying IFM's cross-motion for summary judgment.

■ Although summary judgment was properly granted regarding the lack of formation of a formal contract, this Court must separately consider IFM's motion for summary judgment, which argues that despite the lack of signature by L–P, a contract was nevertheless formed.

#### 1. The district judge did not err by failing to make the appropriate findings of undisputed fact.

■ IFM argues there are no genuine issues of material fact to preclude summary judgment; however, IFM argues the district judge erred by failing to make numerous findings of undisputed fact that would have led to a grant of summary judgment in their favor. IFM cites *Pope v. Intermountain Gas Co.,* 103 Idaho 217, 646 P.2d 988 (1982) as the applicable standard for reviewing a trial court's duty to prepare and make findings of fact and argues that lack of findings may be disregarded on appeal only if the record is clear and yields an obvious answer to the relevant factual questions; otherwise the failure to make findings of fact on material issues affecting the judgment requires the judgment to be set aside. *Id.* at 225, 646 P.2d at 996. IFM's reliance on *Pope* for the trial court's duty to make findings of fact, and our standard or review, is misplaced. *Pope* involved a case on appeal from a judgment after trial where the court sat as the trier of fact. In the case at hand, the district judge was not the trier of fact during a trial but was ruling on a summary judgment motion. Although, as the ultimate trier of fact, the district judge is allowed on summary judgment to arrive at the most probable inferences based upon the undisputed evidence properly before him, the district judge does not make "findings of fact." This Court exercises free review over the entire record that was before the district judge to determine whether either side was entitled to judgment as a matter of law and reviews the inferences drawn by the district judge to determine whether the record reasonably supports those inferences. *Clark v. State Dept. of Health and Welfare,* 134 Idaho 527, 5 P.3d 988 (2000). Based on this review, we find the district judge did not err by failing to recognize undisputed facts in the record. In addition, as discussed below, the record reasonably supports the inferences drawn by the district judge in denying IFM's motion for summary judgment.

*2. The district judge correctly ruled there was no contract formed between the parties.*

 IFM argues summary judgment should have been granted in its favor because the undisputed facts establish, as a matter of law, that L–P's presentation of the contract for signature by Briggs was an "offer" and Briggs' unconditional acceptance formed a binding contract, citing RESTATEMENT (SECOND) OF CONTRACTS § 30(2) (1981). An offer "is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." RESTATEMENT (SECOND) CONTRACTS § 24. An offer is distinguished from "preliminary negotiations", which are defined as,

> [a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.

RESTATEMENT (SECOND) CONTRACTS § 26. IFM argues Stone's presentation of the contract was an offer. In addition, IFM argues that Briggs believed Stone had presented the completed contract for review to her supervisor. However, in his deposition, Briggs also admits he knew Stone did not have the authority to sign the contract, and Stone specifically told Briggs "she was going to take it back for signature and mail [Briggs] a copy." The undisputed facts in the record reasonably support the district judge's conclusion that the presentation of the contract to Briggs for a signature was not an offer and Briggs was not justified in assuming his assent would conclude the bargain, especially considering that Stone specifically told Briggs a further manifestation of assent was necessary.

IFM also points to Stone's admission that she "may" have told Briggs to begin work immediately and IFM began work on the Wolverine Sale, as evidence that a contract was formed. This fact does not establish mutual assent or the formation of a contract, but simply provides an argument for expectation damages.

 IFM further argues the mere absence of a signature did not prevent contract formation, citing *Smith v. Boise Kenworth Sales, Inc.*, 102 Idaho 63, 67, 625 P.2d 417, 418 (1981). However, even if the lack of a signature does not necessarily prevent contract formation, IFM still must show a contract was formed through mutual assent. *Thompson v. Pike*, 122 Idaho 690, 696, 838 P.2d 293, 299 (1992). A distinct understanding common to both parties is necessary in order for a contract to exist. *Mitchell v. Siqueiros*, 99 Idaho 396, 400, 582 P.2d 1074, 1078 (1978)(citing *Brothers v. Arave*, 67 Idaho 171, 174 P.2d 202 (1946)). Whether a contract exists when contracting parties agree to reduce their agreement to writing, is a question of the parties' intent. *Id. See also, Thompson*, 122 Idaho at 696, 838 P.2d at 299.

> The intent to have a written contract is shown by factors such as: (1) whether the contract is one usually put in writing, (2) whether there are few or many details, (3) whether the amount involved is large or small, (4) whether it requires a formal writing for a full expression of the covenants and promises, and (5) whether the negotiations indicate that a written draft is contemplated as the final conclusion of negotiations. The burden of proof is on the party asserting that the contract was binding before the written draft was signed.

*Id.* An oral agreement is only valid if the written draft is viewed by the parties as a mere record; however, the oral agreement is not valid if the parties view the written draft as a consummation of the negotiation. *Id.* Furthermore, "[w]here it is clear that one party has agreed that an oral agreement must be reduced to writing before it shall be binding, there is no contract until a formal document is executed." *Mitchell*, 99 Idaho at 400, 582 P.2d at 1078 (citations omitted).

The record reveals that logging contracts are usually put in writing and L–P's normal procedure was to put logging contracts in writing. In addition, the proposed contract between L–P and IFM contains extensive details covering proposed payments of more than $321,000. It is undisputed that the parties' intent was to create a written contract to govern their agreement and both parties were to execute the agreement.

238

Briggs understood the document was unsigned when Stone presented it to him. Briggs also knew Stone did not have authority to bind L–P. Furthermore, Briggs was specifically told that the document had to be signed by Coates and would be returned to him by mail. The district judge was correct in inferring from the undisputed facts that the written contract was to be the consummation of the negotiation between the parties and that the signed contract would govern their relationship. Because L–P did not sign the document, and the district judge could reasonably infer L–P did not intend to be bound until the document was signed, the district judge did not err in concluding that the parties lacked mutual assent to be bound.

*3. The district judge did not inappropriately resolve issues of credibility.*

 Finally, IFM argues the district judge erred by implicitly resolving issues of credibility in favor of L–P. IFM argues facts in the record "raise serious issues of credibility concerning the veracity of L–P's employees, Mr. Coates and especially Ms. Stone" and the district judge, by failing to even address these issues, "implicitly and improperly resolved these credibility issues in favor of L–P and against plaintiff IFM." A trial court clearly may not resolve issues of credibility on summary judgment. *Argyle v. Slemaker,* 107 Idaho 668, 671, 691 P.2d 1283, 1285 (1984). However, from our review of the record and the undisputed facts, we find the district judge's reasonable inferences did not require, and are not based on, any determinations of credibility.

**C. Attorney's fees and costs.**

 The district judge awarded costs to L–P under I.R.C.P. 54(d)(1) and attorney fees pursuant to I.C. § 12–120(3). Idaho Code § 12–120(3), provides:

> In any civil action to recover on ... contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

"Where a party alleges the existence of a contractual relationship of a type embraced by section 12–120(3) ... that claim triggers the application of the statute and a prevailing party may recover fees even though no liability under a contract was established." *Farmers Nat. Bank v. Shirey,* 126 Idaho 63, 73, 878 P.2d 762, 772 (1994)(*citing Twin Falls Livestock Comm'n Co. v. Mid–Century Ins. Co.,* 117 Idaho 176, 184, 786 P.2d 567, 575 (Ct.App.1989)). IFM alleged the existence of a contractual relationship and although no liability under contract was established, as the prevailing party, L–P is entitled to fees under this section. *Id.* In addition, because I.C. § 12–120(3) applies to attorney fees incurred on appeal as well as at trial, we also award to L–P reasonable attorney fees on appeal. *Dennett v. Kuenzli,* 130 Idaho 21, 32, 936 P.2d 219, 230 (Ct. App.1997) (citations omitted).

## IV.

## CONCLUSION

The district judge properly granted summary judgment in favor of L–P, denying the existence of a formal contract. We uphold the award of fees below and award fees and costs to L–P on appeal.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, CONCUR.