IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 34666

ROBERT GRAY, )
            )
 Plaintiff-Appellant, )
            )
v. )   **Boise, January 2009**
            )
            )  **2009 Opinion No. 61**
TRI-WAY CONSTRUCTION SERVICES, )
INC., a Washington corporation; RAY )
ALLRAD, an individual; KATHY ) **Filed: April 27, 2009**
PETERSON, an individual; GARY )
PETERSON, an individual, )  **Stephen W. Kenyon, Clerk**
            )
 Defendants-Respondents. )
            )

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

District court order granting summary judgment on employment contract, affirmed in part, reversed in part¸and remanded.

Holland & Hart, LLP, Boise, for appellant. Erik F. Stidham argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents. Jason Goodwin Murray argued.

---

BURDICK, Justice

  This dispute arises out of an alleged employment contract between Appellant Robert Gray and Respondents Tri-Way Construction Services, Inc., a Washington corporation; and Ray Allard, Kathy Peterson and Gary Peterson, as individuals (collectively Tri-Way). Gray appeals from the district court's order of summary judgment in favor of Tri-Way on his breach of contract, equitable estoppel, statutory wage, constructive fraud, quantum meruit, and unjust enrichment claims. We affirm in part the district court's order of summary judgment on Gray's breach of contract, statutory wage, and constructive fraud claims. We reverse in part the district court's order of summary judgment on Gray's quantum meruit and unjust enrichment claims,

1

holding that the district court improperly placed the burden of production on Gray (the nonmoving party) at the summary judgment stage, and remand for a trial on the merits.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2004, Gray entered into negotiations with Tri-Way regarding Gray expanding the company's operations into Arizona. At the time, Gray worked as a senior construction manager for Albertson's and had been employed there since February of 1987. Gray, Allard, and Gary Peterson held a number of discussions concerning various proposed business ventures and met in Tri-Cities at some point during February of 2004 to discuss the terms of Gray's employment. Following that meeting, Gray contacted his attorney and his accountant and requested that they work on a draft employment proposal. Gray also requested that they draft an option to purchase corporate stock, whereby Gray would buy out Gary Peterson's interest in Tri-Way.

On March 10, 2004, Gray emailed Allard and Gary Peterson an outline of his employment proposal "to give [the] guys something to chew on" while he was on vacation. Under his proposal, Gray was to draw a minimal salary of $400 per week until 2005, after which time he would be paid $110,000 as either salary or draws. Gray also proposed that no parties would take dividends out of the retained earnings until 2009, at which point Gray would be entitled to 33% of the retained earnings. Finally, Gray proposed that on January 1, 2009 he would become a 50-50 partner in Tri-Way.

On May 1, 2004, Gray quit his job with Albertson's. Shortly thereafter on May 19, 2004, Gray emailed his initial Draft Employment Agreement to Tri-Way, proposing: (1) a five-year term of employment beginning June 1, 2004 and ending on August 1, 2009, unless his employment was otherwise terminated as provided in the draft agreement; (2) a $4,000 per month salary until January 2005, at which point Gray's salary would increase to $10,000; and (3) entitlement to 50% of the net profits, before taxes, for Tri-Way's Arizona operations.

On May 21, 2004, Gray met with Gary Allard, Gary Peterson, and Kathy Peterson, (Gary's Peterson's wife) to discuss the terms of the Draft Employment Agreement along with the Draft Option to Purchase Corporate Stock. During this meeting, the parties talked about adding a non-compete clause to the agreement and reducing Gray's compensation starting in 2005 to $8,000 per month. Gray contends that the parties reached an agreement as to the terms of his

compensation by the end of the meeting; however, Ray Allard and Gary Peterson claim that Tri-Way rejected Gray's proposed employment agreement. Neither party signed this employment agreement. At the conclusion of the meeting, Gray signed a W-4 and an I-9 and became an employee of Tri-Way.

Sometime after the May 21st meeting, Gray had his attorney draft a second employment agreement. Although it is unclear when this document was prepared, it reasonably follows that it was prepared after the May 21st meeting because it incorporated the non-compete clause and the change to Gray's salary starting in 2005 that were both discussed during that meeting.

On June 1, 2004, Gray began working for Tri-Way. Even after his start date, however, subsequent drafts of the employment agreement were still being exchanged between the parties. First, Tri-Way's attorneys drafted an agreement dated June 4, 2004, which reflected changes to Gray's salary and bonus provisions. These changes included a reduction in Gray's salary from $10,000 to $8,000 per month under Section 4.1 of the agreement, along with pro-rating the proposed incentive or bonus pay to June 1, 2004 and calculating such pay on a calendar year basis under Section 4.3. This draft also contained typed italicized remarks inserted into Section 4.2, the provision labeled "Performance Based Salary," stating "*this section is too confusing? computed when—each month at the end of the first year?*" Later, Gray received a subsequent version prepared by Tri-Way dated June 10, 2004. Like the June 4, 2004 version, this draft also contained typed italicized remarks inserted in the middle of the text expressing continued concerns about the language in the performance-based salary section. The June 10, 2004 draft also contained Gray's handwritten comments on it regarding the non-compete clause, stating: "Not applicable if they terminate – If I leave on my own, ok." Neither agreement was ever signed by both parties.

On July 27, 2004, approximately six weeks after he began working, Gray emailed Gary Peterson asking to meet in Seattle the following week. In his email, Gray stated: "I also hope to have the final draft of our agreements with me, so we could possibly go over those and sign them, and I could hand you your $5,000."[1] The parties continued to modify and discuss the salary and bonus provisions throughout September 2004, at which time Gray, Allard, and Gary

---

[1] The $5,000 was to be paid by Gray in consideration of the option to purchase Gary Peterson's stock in Tri-Way. The $5,000 was never tendered.

Peterson met in person in Auburn to discuss a compromise. However, no agreement was ever reached.

On October 2, 2004, Gray sent his final employment proposal to Ray Allard, indicating that it was a "last gasp" effort to try to put the deal together. Gray gave Tri-Way until October 25, 2004 to agree to his terms; however, no agreement was ever reached. On October 26, 2004, Gray emailed Gary Peterson to thank him for the opportunity "to try to put this 'deal' together." Shortly thereafter, Gray resigned from Tri-Way.

During the time Gray worked for Tri-Way, he brought two projects to the company that generated approximately $1,175,000.00 in gross revenues and $271,792.48 in net income for Tri-Way. Tri-Way paid Gray a $4,000 per month salary for services rendered during his tenure with the company and offered him a payment of $60,000 after he left, which the company felt reflected a reasonable value for Gray's services for the two projects he ran. It is unclear whether Tri-Way retracted its offer of $60,000 or whether Gray rejected Tri-Way's offer.

Gray filed suit against Tri-Way asserting breach of contract, statutory wage, equitable estoppel, promissory estoppel, and fraud claims. Gray later amended his complaint to add claims for quasi-estoppel, quantum meruit, constructive fraud, and unjust enrichment. Tri-Way countersued. Following discovery, both parties moved for summary judgment. During oral argument on the parties' motions for summary judgment, the district court *sua sponte* ordered further briefing regarding the applicability of the statute of frauds to the employment agreement. The district court further ordered the parties into mediation. After mediation attempts failed, the district court issued an order granting summary judgment to Tri-Way. However, because the order only appeared to address the breach of contract, statutory wage, and statute of frauds issues, Gray filed a motion for clarification. The district court subsequently issued an order clarifying that it entered summary judgment on Gray's quantum meruit, unjust enrichment, equitable estoppel, and fraud claims as well. Gray now appeals from the district court's order of summary judgment.

## II. STANDARD OF REVIEW

When reviewing an order for summary judgment, this Court applies the same standard of review as was used by the trial court in ruling on the motion for summary judgment. *See Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 307, 160 P.3d 743, 746 (2007). Summary

4

judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Cristo*, 144 Idaho at 307, 160 P.3d at 746.

"It is axiomatic that upon a motion for summary judgment the non-moving party may not rely upon its pleadings, but must come forward with evidence by way of affidavit or otherwise which contradicts the evidence submitted by the moving party, and which establishes the existence of a material issue of disputed fact." *Zehm v. Associated Logging Contractors, Inc.*, 116 Idaho 349, 350, 775 P.2d 1191, 1192 (1998). This Court liberally construes all disputed facts in favor of the nonmoving party, and all reasonable inferences drawn from the record will be drawn in favor of the nonmoving party. *Cristo*, 144 Idaho at 307, 160 P.3d at 746. If reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented, then summary judgment is improper. *McPheters v. Maile*, 138 Idaho 391, 394, 64 P.3d 317, 320 (2003).

### III. DISCUSSION

On appeal, Gray claims that the district court erred in granting summary judgment to Tri-Way on his breach of contract, equitable estoppel, statutory wage, constructive fraud, quantum meruit, and unjust enrichment claims. Each claim will be discussed in turn.

### A. Breach of Contract Claim

First, Gray asserts that the district court erred in determining that the parties intended that the employment agreement be reduced to writing to be enforceable and, therefore, there was no meeting of the minds necessary for contract formation in this case. Gray asserts that the conduct of the parties reflects their intent to contract regarding the terms of his compensation *prior* to memorializing the employment agreement. The conduct Gray refers to is as follows: (1) the parties discussed and agreed upon substantial terms of the agreement during the May 21, 2004 meeting and Tri-Way subsequently provided Gray with employment paperwork that Gray filled out, thus becoming a Tri-Way employee; (2) Tri-Way allowed Gray to quit his job with Albertson's to open up the Arizona division of the company; (3) each of the draft agreements prepared after June 1, 2004 were written to apply retroactively to Gray's start date of June 1,

2004; and (4) Tri-Way failed to inform Gray that it had rejected the agreement or ~~notify him~~ that he should hold off joining Tri-Way until the parties' agreement had been confirmed in writing.

Contract formation requires mutual assent. *Thompson v. Pike*, 122 Idaho 690, 696, 838 P.2d 293, 299 (1992). "A distinct understanding common to both parties is necessary in order for a contract to exist." *Id.* Whether mutual assent exists is a question of fact. *Id.*

"The parties' intent determines whether an oral contract was formed when the parties agree to reduce their agreement to a writing." *Thompson*, 122 Idaho at 696, 838 P.2d at 299. If the parties view the written draft as merely a record, then the oral agreement is valid. *Id.* However, if the parties view the written draft a consummation of the negotiation, then the oral agreement is not valid. *Id.* The Court looks to the following factors in determining if the parties intended to have a written contract: (1) whether the subject matter of the contract is one usually put in writing, (2) whether the contract contains many details, (3) whether a large amount of money is involved, (4) whether the contract requires a writing for a full expression of the covenants and promises, and (5) whether the negotiations indicate that a written draft is contemplated as the final conclusion of the negotiations. *Intermountain Forest Management, Inc. v. Louisiana Pacific Corp.*, 136 Idaho 233, 237, 31 P.3d 921, 925 (2001). "The burden of proof is on the party asserting that the contract was binding before the written draft was signed." *Id.* "Where it is clear that one party has agreed that an oral agreement must be reduced to writing before it shall be binding, there is no contract until a formal document is executed." *Mitchell v. Siqueiros,* 99 Idaho 396, 400, 582 P.2d 1074, 1078 (1978).

Although mutual assent is a question of fact, there are no disputed issues of material fact in this case that the parties intended for the terms of Gray's employment agreement to be reduced to writing in order for the agreement to be binding. First, the subject matter of the contract, here a five-year employment contract, is not just generally put into writing, but is required to be in writing. An employment contract for a fixed term greater than one year is subject to the statute of frauds. *Burton v. Atomic Workers Federal Credit Union*, 119 Idaho 17, 19–20, 803 P.2d 518, 520–21 (1990). Furthermore, this Court held in *Burton* that the doctrine of part performance is inapplicable to an employment contract that falls within the statute of frauds. *See* 119 Idaho at 20, 803 P.2d at 521. Thus, an oral employment contract would not be enforceable in this case. Second, the employment agreement contained many details, including specific provisions governing the non-compete clause, grounds for termination, and employee benefits. Third, the

6

agreement involved a large amount of money, as Gray was to be paid $4,000/month for the first year and $8,000/month for the remaining years, and was also to receive some portion of the Arizona profits under the terms of the agreement.[2] Fourth, the agreement contained an integration clause, demonstrating that the contract requires a writing for a full expression of the covenants and promises, as "[t]he salutary purpose of (an integration clause) is to preclude consideration of matters extrinsic to the agreement." *Star Phoenix Min. Co. v. Hecla Min. Co.*, 130 Idaho 223, 233, 939 P.2d 542, 552 (1997) (quoting *Havel v. Kelsey-Hayes Co.,* 83 A.D.2d 380, 384 (N.Y.A.D. 1981)). Finally, the parties were exchanging written drafts of the agreement throughout negotiations, which indicates that the parties contemplated the final agreement would be in writing. In light of these factors, we conclude that the parties anticipated consummating all contract negotiations with a written document. Therefore, we affirm in part the district court order of summary judgment dismissing Gray's breach of contract claim.

### B. Equitable Estoppel Claim

Next, Gray argues that the district court erred in dismissing his claim that Tri-Way was equitably estopped from asserting the statute of frauds. In its order granting summary judgment, the district court held that even if it were to determine that there was an oral contract in place, the statute of frauds precludes its enforcement. First, Gray argues that it was improper for the district court to consider the statute of frauds defense since it was the court itself that raised the issue *sua sponte* during the hearing on the parties' motions for summary judgment. Gray argues that even if it was not error for the district court to consider the statute of frauds defense, the 50% profit-sharing provision is outside the operation of the statute of frauds because the net profits could have been distributed within one year and, therefore, the provision should be enforced separately. In support of his argument, Gray relies solely on *Gomez v. MasTec North America, Inc.*, 2006 WL 36902 (D. Idaho 2006), an unpublished federal district court opinion. In that case, Judge Williams held that although the oral five-year employment agreement at issue was unenforceable under the statute of frauds, the annual bonus provision was capable of being performed within one year and, therefore, was not subject to the statute of frauds. Alternatively,

---

[2] The parties agreed that Gray was to be paid 50% of the profits from the Arizona division. During Gary Peterson's deposition, he testified that he "was never not in agreement for the 50 percent" of the net profits. However, the parties disagreed as to how the profit sharing provision was to be computed.

Gray argues that Tri-Way is barred from asserting the statute of frauds defense under the doctrine of equitable estoppel since Gray partly performed under the contract.

We find that it is unnecessary to address Gray's arguments regarding the statute of frauds and equitable estoppel. After determining that the parties intended for the employment agreement to be in writing to be enforceable, the district court stated: "[E]ven if the Court were to determine that there w[as] [an] oral contract[], as Gray contends, the statute of frauds defense precludes enforcement." Only then did the district court go on to address why the statute of frauds precluded enforcement of any alleged oral employment agreement, and consequently why the doctrine of equitable estoppel could not render the agreement enforceable. These were merely alternative grounds under which the district court granted summary judgment against Gray on his breach of contract claim. As set forth above, the district court correctly determined that there could be no oral agreement in this case. Accordingly, we need not determine whether the district court's findings as to the statute of frauds defense and equitable estoppel also support its order of summary judgment as to Gray's breach of contract claim.

## C. Statutory Wage Claim

Gray also argues that the district court erred in granting summary judgment against him on his statutory wage claim. Gray asserts that under Idaho's Wage Claim Statute, Tri-Way is required to pay him bonus compensation. In its order granting summary judgment to Tri-Way, the district court found that Gray had failed to introduce any evidence that the parties actually agreed on the terms of his bonus and, therefore, dismissed Gray's statutory wage claim on summary judgment.

Claims for wages are governed by Chapter 6 of Title 45 of the Idaho Code. Pursuant to Idaho's Wage Claim Statute, employers are required to pay all wages due to their employees at least once during each calendar month or on regular paydays designated in advance by the employer. I.C. § 45-608. The term "wage" is broadly defined under I.C. § 45-601(7) as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece or commission basis." I.C. § 45-601(7). In *Paolini v. Albertson's Inc.*, 143 Idaho 547, 149 P.3d 822 (2006), we held that I.C. § 45-608, by its terms, "is not limited to wages earned during a calendar month or to wages that are normally paid every calendar month." 143 Idaho at 549, 149 P.3d at 824. This Court went on to state that it applies to all wages due during the month. *Id.* Thus, "[w]ages earned over a longer period of time, such as an annual bonus

8

based upon net profits, will come due during a specific calendar month and are covered by the statute." *Id.*; *see also Johnson v. Allied Stores Corp.*, 106 Idaho 363, 367, 679 P.2d 640, 644 (1984) (citing *Thomas v. Ballou-Latimer Drug Co.*, 92 Idaho 337, 342, 442 P.2d 747, 752 (1968)).

We find that there is no basis for Gray's statutory wage claim. Idaho Code § 45-606, which governs the payment of wages upon separation of employment, requires that an employer pay all wages due the employee by the earlier of the next regularly scheduled payday or within ten days of termination by either the employer or employee. In this case, it has previously been determined that no enforceable employment contract exists. Thus, under a contractual basis, Gray has failed to establish that a bonus was actually *due* from Tri-Way upon his separation of employment. As such, we affirm the district court's summary judgment dismissal of Gray's statutory wage claim.

## D. Constructive Fraud Claim

In addition, Gray asserts the district court erred in ordering summary judgment against him on his claim for constructive fraud. The district court found no indication in the record that Gray was justified in relying upon any alleged oral representations by Tri-Way that they had an agreement. Gray argues that contrary to the district court's determination, there is evidence in the record to support the reasonableness of his reliance on Tri-Way's representations regarding the bonus compensation. The evidence Gray directs this Court's attention to is as follows: (1) Tri-Way never told Gray that it had rejected the terms of his employment agreement, and (2) Tri-way allowed Gray to begin working and only later attempted to negotiate the terms of his employment agreement.

"An action in constructive fraud exists when there has been a breach of a duty arising from a relationship of trust and confidence, as in a fiduciary duty." *Hines v. Hines*, 129 Idaho 847, 853, 934 P.2d 20, 26 (1997). "Examples of relationships from which the law will impose fiduciary obligations on the parties include when the parties are: members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends." *Mitchell v. Barendregt*, 120 Idaho 837, 844, 820 P.2d 707, 714 (Ct. App. 1991). "The gist of a constructive fraud finding is to avoid the need to prove intent (i.e., knowledge of falsity or intent to induce reliance) [under the elements required to prove actual fraud], since it is inferred directly from the relationship and the breach." *Country Cove*

9

*Dev., Inc. v. May*, 143 Idaho 595, 601, 150 P.3d 288, 294 (2006). "A party must establish nine elements to prove [actual] fraud: '(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.'" *Glaze v. Deffenbaugh*, 144 Idaho 829, 833, 172 P.3d 1104, 1108 (2007) (quoting *Mannos v. Moss*, 143 Idaho 927, 931, 155 P.3d 1166, 1170 (2007)). In sum, if a plaintiff establishes that there has been a breach of duty arising from a relationship of trust and confidence, the plaintiff is not required to prove (1) the speaker's knowledge of the falsity regarding the statement or representation of fact, or (2) the speaker's intent that the hearer rely on the statement or representation of fact, to sustain a claim of constructive fraud. *See Country Cove*, 143 Idaho at 601, 150 P.3d at 294. However, the party is still required to prove the remaining seven elements of actual fraud.

Assuming, without deciding, that Gray is correct that his "longstanding friendship with Allard" and Gray's trust in Tri-Way to protect his interests establishes a relationship of trust and confidence between Gray and the Tri-Way parties, Gray's claim for constructive fraud still fails. Based on the evidence in the record, there are no disputed issues of material fact that Gray failed to establish justifiable reliance. Under section 544 of the Restatement (Second) of Torts, **"**[t]he recipient of a fraudulent misrepresentation of intention is justified in relying upon it if the existence of the intention is material and the recipient has reason to believe that it will be carried out." "Whether the recipient has reason for this belief depends upon the circumstances under which the statement was made, including the fact that it was made for the purpose of inducing the recipient to act in reliance upon it and the form and manner in which it was expressed." Restatement (Second) of Torts § 544, comment a (1965). Under the circumstances of this case, we agree with the district court that Gray had no reason to believe that Tri-Way would carry out the terms of the employment agreement. As set forth above, Gray continued to send and receive draft employment agreements after he began working for Tri-Way on June 1, 2004 that contained handwritten notes and italicized type in the very sections addressing the bonus compensation at issue. Although these changes were relatively minor, they indicate that Gray was aware that Section 4.3, governing incentive or bonus pay, was still being negotiated. Gray began work on June 1, 2004 without a formal agreement in place at his own risk. Thus, the fact that Tri-Way never informed Gray that it rejected the terms of the employment agreement, or the

fact that Tri-Way allowed Gray to begin work without an agreement in place, does not establish justifiable reliance on Gray's part. Therefore, we affirm the district court's summary judgment dismissal of Gray's claim for constructive fraud.

**E. Quantum Meruit Claim**

Gray also argues that the district court erred in granting summary judgment to Tri-Way on his claim for quantum meruit. Specifically, Gray argues that the district court erred in finding that he had failed to present any evidence that the customary rate of pay for his work in the community at the time the work was performed included a bonus. Gray argues there is evidence in the record indicating that he was not paid the reasonable value for his services, i.e., (1) Tri-Way received hundreds of thousands of dollars in net profits attributable to Gray's efforts, (2) Tri-Way offered Gray a $60,000 bonus after he left for the two projects he ran, (3) the fact that Gray's previous salary and bonus provisions at Albertson's ($108,000 per year plus stock options and bonus) were significantly higher than Gray's base salary at Tri-Way, and (4) the fact that Tri-Way employees filling lower positions earned significantly more than Gray did based on his $4,000 per month salary.

The doctrine of quantum meruit is a remedy for an implied-in-fact contract and permits a party to recover the reasonable value of services rendered or material provided on the basis of an implied promise to pay. *See Cheung v. Pena*, 143 Idaho 30, 35, 137 P.3d 417, 422 (2006). An implied-in-fact contract is grounded in the parties' agreement and tacit understanding that there is a contract. *Fox v. Mountain West Elec., Inc.*, 137 Idaho 703, 708, 52 P.3d 848, 853 (2002). "The general rule is that where the conduct of the parties allows the dual inferences that one performed at the other's request and that the requesting party promised payment, then the court may find a contract implied in fact." *Homes by Bell-Hi, Inc. v. Wood*, 110 Idaho 319, 321, 715 P.2d 989, 991 (1986).

Before addressing the merits of Gray's claim, we find it necessary to explain why Gray may be entitled to relief under an implied-in-fact contract in light of our previous holding that the parties intended that any contract be in writing to be enforceable. In this case, the conduct of the parties leads to the dual inference that Gray performed at Tri-Way's request and that Tri-Way promised to pay Gray the reasonable value for his services. Such inferences are found in the fact that Tri-Way paid Gray $4,000 per month for his services and offered him a $60,000 payment as an attempt to "make a fair assessment of the value . . . for the two projects he ran." Although the

11

district court did not specifically find that an implied-in-fact contract exists, it in essence did so by determining that the issue regarding quantum meruit would be a jury question "if the dispute was that Gray had not been compensated for his services." From this statement, the Court can reasonably infer the district court determined that Gray performed at Tri-Way's request and that Tri-Way promised to pay Gray for his services. The fault in the district court's statement is that it does not phrase the issue as being whether Gray was *reasonably* compensated for his services. If the district court had phrased the issue that way, it would have found that there is an implied-in-fact contract under which Gray is entitled to the relief, i.e., the reasonable value of his services. Although Gray is not able to enforce the specific provisions contained in the draft employment contracts under an implied-in-fact contract, including the 50% profit-sharing provision, he is able to recover the reasonable value of his services, which may ultimately be found to include some form of "bonus" compensation if the amount is determined to be over the $4,000 per month salary that was actually paid. Therefore, it is not inconsistent of us to hold that the parties intended that any contract be in writing to be enforceable and at the same time hold that Gray may be entitled to relief under an implied-in-fact contract.

Therefore, we must determine whether it was proper for the district court to award summary judgment against Gray under the reasoning that Gray failed to present any evidence that the customary rate of pay for his work in the community at the time the work was performed included a bonus. As the moving party, Tri-Way had the burden of proving that there was a lack of genuine issue of material fact as to whether Gray was paid the reasonable value for his services. *See Vincen v. Lazarus*, 93 Idaho 145, 149, 456 P.2d 789, 793 (1969). In Tri-Way's memorandum in support of its motion for summary judgment, Tri-Way argued that the only inference the district court could make from the parties' conduct was that Gray received precisely what he requested—"a $4,000 per month salary from June 1 through November 30, 2004." However, just because Tri-Way paid Gray the $4,000 per month salary that he requested does not necessarily mean Gray received the reasonable value for his services. Gray also requested 50% of the net profits for the Arizona division. Furthermore, Peterson testified during his deposition that Tri-Way offered Gray a $60,000 payment at the end of his employment as an attempt to "make a fair assessment of the value . . . for the two projects he

12

ran."[3]  This evidence tends to demonstrate that the reasonable value for Gray's services was over the $4,000 per month salary paid to Gray by the company.  Because Tri-Way failed to meet its burden as the moving party, the district court improperly placed the burden of production on Gray, the non-moving party, to show that the customary rate of pay for his work in the community at the time the work was performed included a bonus.  As such, we reverse in part the district court's award of summary judgment against Gray on his quantum meruit claim and remand for a trial on the merits.

**F. Unjust Enrichment Claim**

Finally, Gray asserts that the district court erred in granting summary judgment in favor of Tri-Way on his unjust enrichment claim, arguing that Tri-Way was enriched by the two profitable projects he brought to the company.  The district court determined that since Gray had failed to introduce any evidence of the amount Tri-Way was enriched by the two projects in response to Tri-Way's motion for summary judgment, his claim for unjust enrichment failed.  Gray argues evidence of Tri-Way's enrichment is found in the fact that the two projects grossed revenues of approximately $1.2 million, a figure that far outweighs the $4,000 per month salary he was paid by Tri-Way.

Unjust enrichment, or restitution, is the measure of recovery under a contract implied in law.  *Barry v. Pacific West Const., Inc.*, 140 Idaho 827, 834, 103 P.3d 440, 447 (2004).  "A contract implied in law . . . 'is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent of the agreement of the parties . . . .'"  *Id.*  The measure of recovery on an unjust enrichment claim "is not the actual amount of the enrichment, but the amount of enrichment which, as between two parties it would be unjust for one party to retain."  *Beco Constr. Co., Inc. v. Bannock Paving Co., Inc.*, 118 Idaho 463, 466, 797 P.2d 863, 866 (1990).  The plaintiff has the burden of proving that the defendant

---

[3] Although Gray bears the burden at trial of proving the reasonable value of his services, the order at issue was in response to Tri-Way's motion for summary judgment.  Idaho Rule of Civil Procedure 56(c) sets forth that a judgment on a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The rule does not distinguish between which party's pleadings, depositions, admissions, and affidavits that the district court may consider when ruling on a motion for summary judgment.  Here, Peterson testified during his deposition that Tri-Way offered Gray a $60,000 bonus as an attempt to "make a fair assessment of the value . . . for the two projects he ran."  Therefore, this evidence, although not introduced by Gray, may be used to establish the reasonable value of Gray's services for purposes of summary judgment.

received a benefit and of proving the amount of the benefit which the defendants unjustly retained. *Blaser v. Cameron*, 121 Idaho 1012, 1017, 829 P.2d 1361, 1366 (Ct. App. 1992). "The value of services rendered can be used as evidence of the value of the benefit bestowed under the theory of unjust enrichment." *Id.* "Although damages need not be proven with mathematical precision, the damages, i.e., the value of any benefit unjustly received by the defendant in an action based upon unjust enrichment, must be proven to a reasonable certainty." *Gillette v. Storm Circle Ranch*, 101 Idaho 663, 667, 619 P.2d 1116, 1120 (1980).

We find that the district court erred by dismissing Gray's claim for unjust enrichment on summary judgment. The burden was on Tri-Way, the moving party in this case, to establish the lack of a genuine issue of material fact as to whether it was unjustly enriched by Gray's services. *See Vincen v. Lazarus*, 93 Idaho 145, 149, 456 P.2d 789, 793 (1969). However, in Tri-Way's memorandum in support of its motion for summary judgment, Tri-Way relied solely on the fact that it paid Gray the $4,000 per month agreed upon salary and offered him a $60,000 "bonus" in support of its assertion that Tri-Way was not unjustly enriched. The fact that Tri-Way offered Gray $60,000 as an attempt to make a fair assessment of the value of Gray's services for the two projects he ran for the company may be evidence that Tri-Way was benefitted by Gray's services, *see Blaser v. Cameron*, 121 Idaho 1012, 1017, 829 P.2d 1361, 1366 (Ct. App. 1991) (holding that "[t]he value of services rendered can be used as evidence of the value of the benefit bestowed under the theory of unjust enrichment."); and may also be evidence of the amount that it would be unjust to allow Tri-Way to retain.[4] Thus, contrary to the district court's holding, Gray was not required to prove the amount in which Tri-Way was enriched. Instead, the burden was on Tri-Way to show that it had not received any benefit that it would be inequitable to retain. Based on the evidence in the record, Tri-Way did not meet this burden. As such, we

---

[4] Although Gray bears the burden at trial of proving that Tri-Way received a benefit and of proving the amount of the benefit which Tri-Way unjustly retained in order to prevail on his unjust enrichment claim, the order at issue was in response to Tri-Way's motion for summary judgment. Idaho Rule of Civil Procedure 56(c) sets forth that a judgment on a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The rule does not distinguish between which party's pleadings, depositions, admissions, and affidavits that the district court may consider when ruling on a motion for summary judgment. Therefore, Peterson's deposition testimony, although not introduced by Gray, may be used to establish that Tri-Way received a benefit from Gray's services and to establish the amount of the benefit which Tri-Way unjustly retained for purposes of summary judgment.

14

reverse in part the district court's award of summary judgment on Gray's unjust enrichment claim and remand for a trial on the merits.

**G. Attorney Fees on Appeal**

Both parties assert they are entitled to attorney fees on appeal. First, Gray asserts that he is entitled to attorney fees on appeal pursuant to I.C. §§ 12-120(3) and 12-121. However, both statutes require that the party prevail in order to be awarded attorney fees. Because Gray's quantum meruit and unjust enrichment claims must still be litigated, it remains to be determined whether Gray or Tri-Way will ultimately be the prevailing party in this litigation. *See In re University Place/Idaho Water Center Project*, 146 Idaho 527, __, 199 P.3d 102, 121 (2008). Therefore, we do not award Gray attorney fees on appeal.

Tri-Way asserts that it is entitled to attorney fees on appeal under I.C. § 12-121, arguing that Gray brought and pursued this appeal frivolously. As set forth above, I.C. § 12-121 requires that the party prevail in order to be awarded attorney fees and it remains to be determined whether Gray or Tri-Way will ultimately be the prevailing party in this litigation. As such, we also deny Tri-Way's request for attorney fees on appeal under I.C. § 12-121.

## IV. CONCLUSION

For the reasons set forth above, we affirm in part the district court's order of summary judgment against Gray on his breach of contract, statutory wage, and constructive fraud claims. We reverse in part the district court's order of summary judgment against Gray on his quantum meruit and unjust enrichment claims and remand for a trial on the merits. We deny both parties' requests for attorney fees on appeal.

Justices J. JONES and HORTON, TROUT, Pro Tem and KIDWELL, Pro Tem, **CONCUR.**